**FILED**
**Aug 25, 2020**
**10:42 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Linda Brown,** | ) | **Docket No. 2018-06-0221** |
| **Employee,** | ) | **DOI 2/17/17** |
| **v.** | ) | |
| **Nissan North America,** | ) | **State File No. 130515-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **Safety Nat'l Cas. Corp.,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER

---

Linda Brown seeks workers' compensation benefits for neck, shoulder and back injuries. She alleged these injuries are the result of an incident while working for Nissan. Nissan contests the compensability of her claim, asserting that her preexisting arthritis rather than the work incident was the primary cause of her injuries. This Court held a compensation hearing on August 18, 2020, and concludes that Ms. Brown's claim is not compensable because she did not prove by a preponderance of the evidence that her injuries are work-related.[1]

## History of Claim

As noted below, Ms. Brown filed a previous workers' compensation claim for injuries to her neck and right shoulder that she suffered on December 2, 2016. The Court found in that case that Ms. Brown did not timely file her claim and denied benefits for those injuries. In this case, Ms. Brown alleged reinjury to her neck and right shoulder, as

---

[1] Ms. Brown additionally filed a Petition for Benefit Determination (Docket No. 2018-06-0222) regarding alleged injuries to her neck and shoulders on December 2, 2016. Both parties filed multiple documents using both docket numbers. The Court did not consolidate these cases because they involved different questions of fact and allegations of injuries to different body parts occurring on different days. *See Seals v. England/Corsair Upholstery Mfg. Co.,* 984 S.W.2d 912, 916 (Tenn. 1999). However, for the parties' convenience, the Court heard both cases on the same day. For ease of reference, the Court created one listing of technical record and exhibits to be considered in both cases.

1

well as new injuries to her left shoulder and low back.

Ms. Brown testified she worked at the Nissan plant for five years, performing job duties that required constant reaching, stooping, bending, lifting, drilling, pushing and pulling, in a fast-paced environment. Ms. Brown said she became injured on February 17, 2017. Specifically, while leaning forward to install a left electrical harness into a car's floorboard, her body was in an "L" shape with her weight on her hands, shoulders and back. She testified that suddenly, "my upper body started freezing up – my lower back, and it felt like my arm just wasn't moving." Ms. Brown said her "traps" (trapezius muscle) started "seizing up on me," and she felt "spasms" in her back.

Nissan provided a panel of physicians, and Ms. Brown chose Premise Health, its onsite clinic. She saw Dr. Terri Walker at Premise on March 10, who wrote that Ms. Brown was "seen in the past for neck and bilateral shoulder pain 12/2016 and was diagnosed with degenerative cervical radiculopathy and the claim was deemed personal. Currently she reports neck, shoulder and low back pain." Dr. Walker diagnosed "[c]ervicalgia with radiculitis should be a tie back to the 12/5/16 claim which was denied. The lumbago is more likely from the DDD. DJD of her L-spine which is unlikely primarily work related."

Relying on that opinion, Nissan sent Ms. Brown a denial letter and filed a Notice of Controversy that states, "Treating physician has indicated condition is not primarily work related."

*Proof of Medical Causation*

After the denial, Ms. Brown sought unauthorized treatment for her back, neck and shoulders with several physicians, but ultimately, she was referred to Dr. Margaret MacGregor. Dr. MacGregor, a neurosurgeon, performed the bulk of Ms. Brown's treatment and provided opinions she relied on at the hearing.

Dr. MacGregor's records from Ms. Brown's first visit in April 2018 gave the following history: "neck pain, mid back pain, low back pain." Dr. MacGregor noted "work accident, while lifting a heavy object." She recommended an anterior cervical discectomy and fusion. Dr. MacGregor performed the procedure later that month, listing final diagnoses as cervical radiculopathy; cervical spondylosis; and cervical spinal stenosis without myelopathy. The records mentioned that Ms. Brown reported shoulder and low back pain, but Dr. MacGregor did not treat those body parts.

Ms. Brown continued treating with Dr. MacGregor post-surgery and obtained her opinion on Bureau forms regarding whether the injuries are work-related and the extent of

2

her permanent impairment.[2]  Ex. 8.

First, Ms. Brown filed Dr. MacGregor's C.V. on September 28, 2018.  Next, she filed two original copies of Form C-32 dated October 30, 2018.  The first C-32 listed December 2016 as the alleged date of injury; the second C-32 listed both dates of injury.  The second C-32 described the mechanism of injury as "using the overhead lift apparatus on a repeated basis, as well as a specific lift on 12/2/16 which resulted in neck, shoulder and arm pain[.]"  Dr. MacGregor checked "yes" to whether the employment activity was primarily responsible for advancing a preexisting condition and for the present need for treatment of a preexisting condition.  The form stated that Ms. Brown was taken off work on April 26, 2018, the date Dr. MacGregor performed surgery, and she projected Ms. Brown would reach maximum medical improvement on April 26, 2019.

Dr. MacGregor later completed two Form C-30A Final Medical Reports on September 30, 2019.  The forms did not list a date of injury.  The forms stated that Dr. MacGregor anticipated a need for future treatment to Ms. Brown's "shoulder," but it did not specify which shoulder or both.  She also assigned a twelve-percent permanent impairment using Tables "17-6, 17-7, 17-9, 17-10" of the *AMA Guides, Sixth Edition,* which are used to evaluate adjustments to neck impairments.  The C-30A forms did not identify which section of the cervical spine regional grid in Table 17-2 was assigned before making the adjustments.  No impairment ratings were listed for Ms. Brown's back or shoulders.  Dr. MacGregor wrote a later date for maximum medical improvement than the C-32s, stating that Ms. Brown was unable to work from April 26, 2018, through September 27, 2019.

Nissan countered with opinions from two medical experts to support its position that Ms. Brown's injuries are not work-related.  Dr. Douglas Mathews testified regarding the neck injury, and Dr. Scott Arthur testified about the shoulders.

Dr. Mathews, a neurosurgeon, concluded in his report that "it is much more likely than not that the treatment Ms. Brown received for her cervical degenerative condition was required due to the pre-existing degenerative condition in her cervical spine[,] which became more clinically apparent during her work activities.  The work duties she performed did not cause her degenerative condition."

---

[2] Nissan objected to the admissibility of these forms principally because they were not filed contemporaneously but they also contain other irregularities, many of which are discussed later in this order.  Tennessee Code Annotated section 50-6-235(c)(1) states that any party may introduce direct testimony from a physician through a written medical report signed by the physician, bearing an original signature, and including a statement of qualifications of the person making the report.  Ms. Brown complied with these requirements, albeit not with a singular filing.  Nissan cited no case law to support its argument that the forms are inadmissible on the grounds it offered.  The Court admitted them into evidence but will consider Nissan's concerns with the reliability of Dr. McGregor's opinions when weighing the competing medical evidence.

3

He explained this conclusion at length at a deposition. Dr. Mathews testified that a CT scan from December 2016 and an MRI from July 2017 showed "chronic degenerative findings," which were "clearly present well before her incident[.]" Ex. 9 at 9. He said that these tests revealed no evidence of an acute injury. *Id.* at 12. He concluded that neither event, in December 2016 or February 2017, was "greater than fifty percent responsible" for any of Ms. Brown's spinal pathology. *Id.* at 17. Dr. Mathews pointed out that, post-operatively, Dr. MacGregor also found "significant spondylosis, osteophytic disease . . . [and] the disc material was extremely degenerated," which he said suggested a "longstanding degenerative condition." *Id.* at 20. Dr. Mathews said he would assign no impairment. *Id.* at 18.

On cross-examination, Dr. Mathews acknowledged that one of Ms. Brown's unauthorized providers, a physician assistant, noted an acute injury. *Id.* at 30. Dr. Mathews disagreed with that finding, stating that this provider was likely referring to her complaints from the perspective of time, and that this opinion "does not change the fact that . . . you have degenerative changes that have taken years to develop that become symptomatic from years and years of degeneration." *Id.* at 32. Ms. Brown reminded him about Dr. MacGregor's contrary causation opinions on the C-32s and that she worked at Nissan for four years before the alleged injury. Dr. Mathews replied:

> So the question really is do we think the degenerative changes that are in your neck, in your shoulders, you're a smoker, you're 54, you know, do we think that this was caused from four years at work or years of aging, degenerative arthritis, and my opinion is that it's more than 50 percent related to your aging, your arthritis, your smoking prior to these incidents, prior to even the work activity.

*Id.* at 42-43.

Nissan's other medical expert was Dr. Scott Arthur, an orthopedic surgeon who specializes in shoulders and knees. Ex. 10 at 5. He examined Ms. Brown's shoulders. He concluded that "[s]he may have had some aggravation of her shoulder with repetitive activities at work. However, with the severe bilateral degenerative changes and lack of a significant acute event, it is my opinion that less than 50% of the causation of her severe arthritis is work related."

Dr. Arthur explained this conclusion at a deposition. He reviewed bilateral shoulder x-rays and MRI results and saw no pathology "that could be greater than 50 percent . . . caused by any work activity at Nissan." *Id.* at 22. He stated:

> [B]asically her diagnosis was severe arthritis. And I felt that she probably did have some aggravation with repetitive activities at work, but that, you

4

know, the main problem was her arthritis. And – and the arthritis itself, you know, would be to be considered less than 50 percent related to her work activities.

*Id.* at 24. Dr. Arthur also said that, if Ms. Brown needs shoulder replacements or any additional treatment in the future, the need would be less than fifty percent related to the event at Nissan. *Id.* at 28.

On cross-examination, Dr. Arthur conceded that the MRI showed a rotator cuff tear in the left shoulder, when he had previously stated she did not have a tear. But he characterized this tear as a "fibrillation or slight irritation or inflammation," explaining "when we talk about a significant tear, we talk about the tendon being detached from the bone. Ultimately, that's a minimal finding in the – in the big picture of what your shoulder problem is." *Id.* at 42. Dr. Arthur clarified that Ms. Brown's main problem was "an arthritic shoulder" and the tear/fibrillation was "not a clinically relevant irregularity." *Id.* at 43. He likewise explained that an MRI of her right shoulder showed an "irregularity" of the tendon but was not a torn biceps. *Id.* at 50. Dr. Arthur reiterated that her main problem was "very arthritic shoulders" and not a frozen shoulder or impingement. *Id.* at 60. He further stated that the cartilage loss in her shoulders is "not predominantly due to your activity," noting repetitive activities can contribute to the problem, but a genetic predisposition is likely "the major factor." *Id.* at 66.

*Parties' Contentions*

If the Court finds the injury compensable considering the medical evidence above, Ms. Brown seeks future and past medical benefits. However, she offered no proof of out-of-pocket sums she paid for past unauthorized care. Ms. Brown also requested past temporary disability benefits and permanent disability benefits. The parties agreed that Nissan paid a total of $51,455.75 in short- and long-term disability benefits through a self-funded plan and would be entitled to an offset in that amount if the Court were to award benefits. As to increased permanent disability benefits, Ms. Brown has not returned to work for Nissan or any other employer. She is more than forty years old and a high school graduate.

**Findings of Fact and Conclusions of Law**

The employee in a workers' compensation case has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015).

Here, the threshold issue is whether Ms. Brown suffered an injury as defined in the statute. The Workers' Compensation Law defines an injury as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment." She must also show "to a reasonable degree of medical certainty that [the employment] contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes," and that, "in the opinion of the physician, it is more likely than not, considering all causes, as opposed to speculation or possibility." *See generally* Tenn. Code Ann. § 50-6-102(14) (2019).

Except in the most obvious, simple and routine cases, the employee must establish by expert medical evidence the causal relationship between the claimed injury and the employment activity. *Merriweather v. UGN, Inc.,* No. W2018-02094-SC-R3-WC, 2020 Tenn. LEXIS 12, at *6 (Tenn. Workers' Comp. Panel Jan. 28, 2020). In this case, the parties relied on differing expert opinions. A trial court generally has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Kellerman v. Food Lion, Inc.,* 929 S.W.2d 333, 335 (Tenn. 1996).

Turning first to Ms. Brown's proof, Dr. MacGregor concluded on a Form C-32 that her employment aggravated a preexisting condition and caused her need for treatment. However, when reading those opinions, as well as the entire form, it becomes clear that Dr. MacGregor considered the work incident from December 2016 as well as the February 2017 incident in forming her opinions. This is so because both case numbers are listed on the form, and she described the December incident within the mechanism of injury. The parties did not depose Dr. MacGregor, so the information on these forms is the sole indicator of her causation opinions that is properly before the Court.

The forms contain inconsistencies and other deficiencies that the Court cannot overlook. As Nissan pointed out, the C-30A forms have differing dates of maximum medical improvement from the C-32 form. Neither C-30A lists a date of injury. Both C-30As refer to adjustment tables from the *Guides* for cervical injuries but do not refer to which section of Table 17-2 the basic impairment was derived. The C-32 has two dates of injury on it. No impairment is given for the shoulders or back. And the October 2018 C-32s are dated long before the purported maximum medical improvement date of April 2019. In sum, Dr. MacGregor's opinions are marginally supportive of the work-relatedness of Ms. Brown's injuries at best.

In contrast, Nissan presented two expert opinions, who found otherwise on causation.[3]

---

[3] The Court considers Dr. Walker's opinion only for the purpose of establishing Nissan's basis for denying the claim. Although Ms. Brown selected Premise Health from a panel, Dr. Walker's opinion is not presumed correct under Tennessee Code Annotated section 50-6-114(e) because Nissan did not memorialize her opinion on a C-32 or take her deposition.

Dr. Mathews, a neurosurgeon, brings similar expertise as Dr. MacGregor. He concluded in his report that it is "much more likely than not" that Ms. Brown's neck treatment was required due to the preexisting degenerative condition in her cervical spine that became clinically apparent from work, but her work did not cause her degenerative condition. Dr. Mathews noted that even Dr. MacGregor documented "spondylosis, osteophytic disease . . . [and] the disc material was extremely degenerated," which he said suggested a "longstanding degenerative condition."

As for Dr. Arthur, he concluded Ms. Brown's shoulder condition is not work-related and primarily the result of severe arthritis. As an orthopedic surgeon, he is better qualified than Dr. MacGregor to assess causation for her shoulders. Further, both Drs. Mathews and Arthur maintained their causation opinions, despite vigorous cross-examination by Ms. Brown.

Considering all the medical evidence, Ms. Brown offered Dr. MacGregor's opinion on forms that provide contradictory information and no detail to explain her conclusions, as compared to Nissan's experts, who offered plausible and complete opinions. In sum, Ms. Brown did not satisfy her burden to prove medical causation by a preponderance of the evidence. Therefore, her requested workers' compensation benefits are denied.

*Alternative Findings*

The Supreme Court has held that "[t]he trial court should … hear the entire case and make appropriate findings of fact, and *alternative findings when necessary,* for appellate review." *Cunningham v. Shelton Sec. Serv.,* 46 S.W.3d 131, 137-138 (Tenn. 2001) (emphasis added). Following this directive, the Court makes the alternative findings below for judicial convenience and solely if an appellate court finds error in the compensability holding.

- Because the forms provide contradictory information, Ms. Brown did not establish the dates or duration of temporary total disability.
- Her impairment rating is twelve percent to the body as a whole, which would entitle her to $32,351.94 as an original award under Tennessee Code Annotated section 50-6-207(3)(A). (Fifty-four weeks of benefits times the stipulated compensation rate of $599.11.)
- Ms. Brown did not return to work for Nissan or any other employer and is over age forty, so her original award would be multiplied by 1.35 and 1.2, and her total permanent partial disability award is $52,410.14. *See* Tenn. Code Ann. § 50-6-207(3)(B). However, Nissan is entitled to an offset of $51,455.75 for sums paid as long-and short-term disability benefits under Tennessee Code Annotated section 50-6-114(b), for a net award of $954.39.
- Ms. Brown is entitled to lifetime medical benefits with Dr. MacGregor for all reasonable and necessary treatment of the work injuries.

**IT IS ORDERED** as follows:

1) Ms. Brown's claim is dismissed with prejudice to its refiling.

2) The $150.00 filing fee is taxed to Nissan or its carrier under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August 2019), payable to the Clerk within five days of this order becoming final.

3) Nissan shall file the SD-2 with the Clerk within ten days of the date of judgment.

4) Unless appealed, this order shall become final thirty days after entry.

5) Nissan's counsel may file a motion and affidavit in support of his attorney fee request within thirty days after this order becoming final.

**ENTERED August 25, 2020.**

_Kenneth M. Switzer_
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1) Petition for Benefit Determination, 2/7/18, No. 2018-06-0222
2) Petition for Benefit Determination, 2/7/18, No. 2018-060-0221
3) Dispute Certification Notice, 3/16/18, No. 2018-06-0222
4) Dispute Certification Notice, 3/16/18, No. 2018-06-0221
5) Request for Expedited Hearing, 5/11/18
6) Employer's Response to Employee's Request for Expedited Hearing, 8/15/18
7) Expedited Hearing Order, 9/4/18, No. 2018-06-0222
8) Expedited Hearing Order, 9/4/18, No 2018-06-0221
9) Notice of Objection to Form C-32 Standard Form Medical Report, 11/14/18
10) Employee's Motion to Compel, 11/14/19
11) Employer's Response to Employee's Motion to Compel, 11/20/19
12) Order on Motion to Compel, 12/2/19
13) Employer's Notice Identifying Medical Experts, 4/15/20
14) Notice Identifying Employee's Medical Experts & Records, 6/4/20

15) Employee's Litigation Expenses, 7/1/20
16) Employer's Pre-Hearing Brief, 8/4/20, No. 2018-06-0222
17) Employer's Pre-Hearing Brief, 8/4/20, No. 2018-06-0221
18) Employer's Pre-Hearing Statement, 8/4/20, 2018-06-0222
19) Employer's Pre-Hearing Statement, 8/4/20, 2018-06-0221
20) Employer's Witness List, 8/4/20
21) Dispute Certification Notice and additional issues, 8/4/20
22) Employee's Supplemental Witness List, 8/10/20
23) Pretrial Order

Exhibits:
1)  First Report of Injury, 12/5/16, No. 2018-06-0222
2)  First Report of Injury, 2/17/17, No. 2018-06-0221
3)  Form C-42, Choice of Physician, 12/5/16, No. 2018-06-0222
4)  Form C-42, Choice of Physician, 2/17/17, No. 2018-06-0221
5)  Form C-23, Notice of Denial, 12/16/16, No. 2018-06-0222
6)  Notice of Controversy, 3/21/17, No. 2018-06-0221
7)  Carrier's Letter to Employee, 3/21/17
8)  Employee's medical proof (attached to 6/4/20 notice)
9)  Deposition Transcript of Dr. Mathews and exhibits, 7/22/20
10) Deposition Transcript of Dr. Arthur and exhibits, 7/22/20
11) Employee's Exhibits, 8/4/20-Identification only
11A) Employee's list of certified jobs at Nissan
12) Dr. Gilbert medical records, 11/9/16
13) Dr. Gilbert medical records, 11/4/15

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 25, 2020.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Linda Brown, Employee | X | | | 2184 Riverway Dr. Old Hickory TN  37138 |
| Stephen Morton, Employer's Attorney | | | X | Stephen.morton@mgclaw.com; Amber.dennis@mgclaw.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

9



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on_____      ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*